UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| | NO. CR08-00154-03 |
| VERSUS | |
| | JUDGE DEE D. DRELL |
| DANIEL MORRIS | MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a motion to vacate, set aside, or correct sentence (Doc. 163) filed pursuant to 28 U.S.C. § 2255 by Daniel Morris ("Morris") on July 13, 2009. Morris is contesting his conviction and sentence of 30 months imprisonment imposed on December 18, 2008, in the United States District Court for the Western District of Louisiana in Alexandria, Louisiana, pursuant to a guilty plea to one count of providing contraband (narcotics) to a federal prison inmate. Morris raises the following grounds for relief in his motion:

> 1. Whether Morris had ineffective assistance of counsel through his counsel's failure to file a pretrial motion to suppress evidence seized during an illegal search and seizure, including a statement made by Morris after discovery of evidence in violation of the Fourth Amendment?

> 2. Whether Morris' right to be free from an unreasonable

search and seizure renders his conviction illegal due to the Fourth Amendment violation?

3. Whether counsel's failure to properly advise Morris of his Fourth, Fifth, and Sixth Amendment right renders Morris' entry into a plea agreement with the government involuntary, unintelligent, and unknowing because Morris relied solely on the advice of counsel that he was indeed guilty?

This motion is before the undersigned Magistrate Judge for initial review. See 28 U.S.C. § 2255 and Rule 4(b) of the Federal Rules Governing Section 2255 Proceedings For the United States District Courts.

## Rule 8(a) Resolution

This court is able to resolve the merits of this Section 2255 application without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the petitioner, and the State court records provide the required and adequate factual basis necessary to the resolution of the Section 2255 application. <u>U.S. v. Green</u>, 882 F.2d. 999, 1008 (5th Cir. 1989); Section 2255 Rule 8(a).

## The Law of §2255 Actions

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack".

28 U.S.C. § 2255; United States v. Cates, 952 F.2d 149, 151 (5th Cir.), cert. den., 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992). The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. Cates, 952 F.2d at 151. Also, U.S. v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding. U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Also, U.S. v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995).

A collateral challenge may not do service for an appeal. After conviction and exhaustion and waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted. U.S. v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), cert. den., 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). Even if a defendant raises a constitutional error, he may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the error. U.S. v. Mimms, 43 F.3d 217, 219 (5th Cir. 1995), and cases cited therein. U.S. v. Hicks, 945 F.2d 107, 108 (5th Cir. 1991). Moreover, a

3

prisoner who shows the possibility of prejudice may not obtain collateral relief under §2255 without demonstrating cause for his failure to raise the error at trial or on direct appeal. U.S. v. Shaid, 937 F.2d at 229.

Cause is demonstrated by showing objective external factors which prevented the petitioner from having raised the instant claim previously, and actual prejudice resulting from the error. Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies cause and prejudice. U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995); U.S. v. Flores, 981 F.2d 231, 235-36 (5th Cir. 1993). "Cause" under the cause and prejudice standard must be something external to the petitioner, something that cannot be fairly attributed to him. McCowin v. Scott, 67 F.3d 100, 102 (5th Cir. 1995).

If the petitioner cannot show cause, the failure to raise the claim in an earlier proceeding may nonetheless be excused if the petitioner can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, i.e. the petitioner must make a colorable showing of actual innocence. U.S. v. Flores, 981 F.2d at 235-36. Also, McCleskey v. Zant, 499 U.S. 467, 495, 111 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1991). A fundamental miscarriage of justice occurs only in a very narrow class of cases where a constitutional violation probably resulted in the conviction of an innocent person. McCleskey, 499 U.S. at 494, 111

4

S.Ct. at 1470.

In the case at bar, Morris filed an appeal but withdrew it before a ruling was issued by the Court of Appeals (Doc. 162), then filed this Section 2255 motion (Doc. 163). However, Morris alleges ineffective assistance of counsel. The cause and prejudice test does not apply to claims of ineffective assistance of counsel which are ordinarily brought for the first time on collateral review. U.S. v. Gaudet, 81 F.3d 585, 589 n.5 (5th Cir. 1996), citing U.S. v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992). Also, U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

Ineffective Assistance of Counsel

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the

5

defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Anderson v. Collins</u>, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein. Also, <u>U.S. v. Segler</u>, 37 F.3d 1131, 1136 (5th Cir. 1994).

In the context of a guilty plea, a petitioner must prove not only that his attorney actually erred, but also that he would not have pleaded guilty but for the error. <u>Armstead v. Scott</u>, 37 F.3d 202, 206 (5th Cir. 1994), cert. den., 514 U.S. 1071, 115 S.Ct. 1709 (1995).

<u>Grounds 1 and 2 - Motion to Suppress</u>

First, Morris contends he had ineffective assistance of counsel through his counsel's failure to file a pretrial motion to suppress evidence seized during an illegal search and seizure, including a statement made by Morris after discovery of evidence in violation of the Fourth Amendment. Morris contends he would not have pleaded guilty if his attorney had moved to suppress the cocaine seized when he was strip searched at the Bureau of Prisons when he visited his brother, who was incarcerated there. Morris also contends the violation of his Fourth Amendment right to be free from an unreasonable search and seizure renders his conviction illegal.

Morris relies on the fact that BOP regulations for the proposition that BOP staff had the right to search him only if he consented to the search and there was probable cause to search. Morris contends he neither consented nor refused the search, instead remaining silent when asked if he would consent to a search, and further argues there was no probable cause for the search. The strip search revealed that Morris was wearing a condom that had cocaine in it.

Once a guilty plea has been entered, all nonjurisdictional defects int eh proceedings against a defendant are waived, and the waiver includes all claims of ineffective assistance of counsel except insofar as the alleged ineffective ness relates to the voluntariness of the giving of the guilty plea. U.S. v. Cavitt, 550 F.3d 430, 441 (5th Cir. 2008).

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. Typically, in order to be reasonable under the Fourth Amendment, a search must be supported by a warrant, unless the search is supportable under one or more of the specifically established and well-delineated exceptions to the warrant requirement. Neither a warrant for probably cause not any measure of individualized suspicion is an indispensable component of Fourth Amendment reasonableness in every circumstance. National Treasury Employees

7

Union v. Von Raab, 489 U.S. 656, 665, 109 S.Ct. 1384 (1989). Where a Fourth Amendment intrusion serves special government needs, beyond the normal need to law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context. National Treasury Employees Union, 489 U.S. at 665-666. There are instances when a search furthers a "special governmental need" beyond that of normal law enforcement such that the search, although not supported by the typical quantum of individualized suspicion, can nonetheless still be found constitutionally "reasonable." Neumeyer v. Beard, 421 F.3d 210, 214 (3d Cir. 2005). Because the government need not show probable cause or even reasonable suspicion to support a search under the special needs doctrine, the government must prove instead that its search meets a general test of "reasonableness." Under this standard, the constitutionality of a particular search is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests beyond that of typical law enforcement. Neumeyer, 421 F.3d at 214.

Although a generous amount of deference is given to prison officials on matters of prison safety, security, and discipline, it is clear that visitors do not relinquish their Fourth Amendment

rights at the prison gates. Prison visitors retain the right to be free from unreasonable searches and seizures. The meaning of "reasonableness for Fourth Amendment purposes is highly situational. A search that is reasonable in the prison environment may not be in other contexts less fraught with serious security dangers. The standard of reasonableness that governs searches in a given context depends, in general, upon a balancing of the need to search against the invasion which the search entails. In the volatile context of a prison, the need to preserve internal security is very strong. Prison officials may well have a need to search visitors in some manner in order to prevent the smuggling of contraband (such as drugs or weapons) to inmates. On the other side of the balance, people naturally have a diminished expectation of privacy when they enter a prison, and so those visiting a prison cannot credibly claim to carry with them the full panoply of rights they normally enjoy. Wood v. Clemons, 89 F.3d 922, 928-929 (1st Cir. 1996). Also, Spear v. Sowders, 71 F.3d 626, 629-630 (6th Cir. 1995).

Strip searches of prison visitors are not per se unreasonable. Prison visitation obviously implicates concerns about prison security and such concerns are preeminent. Thorne v. Jones, 765 F.2d 1270, 1275-1276 (5th Cir. 1985), cert. den., 475 U.S. 1016, 106 S.Ct. 1198 (1986). However, a strip search can hardly be characterized as a routine procedure or as a minimally intrusive

9

means of maintaining prison security. A strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual. Accordingly, a strip search cannot be justified absent some quantum of individualized suspicion. In determining the level of individualized suspicion against which to test the constitutionality of prison visitor strip searches with a view to striking the proper balance between respecting the legitimate privacy expectations of prison visitors and the need to maintain prison security, courts have converged upon one common benchmark: the standard of "reasonable suspicion." Reasonable suspicion is the proper standard by which to gauge the constitutionality of prison-visitor strip searches. That standard guards against arbitrary or clearly unfounded searches by placing non-trivial constraints upon the ability of prison officials to strip search visitors, but avoids unduly restricting prison officials in responding to the demands of institutional security. Prison officials violate the Fourth Amendment when they undertake a strip search of a prison visitor without reasonable suspicion of circumstances that justify the search. Wood, 89 F.3d at 928-929. Also, Savard v. Rhode Island, 338 F.3d 23 (1st Cir. 2003), cert. den., 540 U.S. 1109, 124 S.Ct. 1074 (2004); Watt v. City of Richardson Police Dept., 849 F.2d 195, 197 n.3 (5th Cir. 1988); Stewart v. Lubbock Cty., Tex., 767 F.2d 153, 155 (5th Cir. 1985),

10

cert. den., 475 U.S. 1066, 106 S.Ct. 1378 (1986).

A reasonable suspicion of wrongdoing is something stronger than a mere hunch, but something weaker than probable cause. At a minimum, the reasonable suspicion standard requires that the decision to search be based on articulable factual information bearing at least some indicia of reliability. <u>Wood</u>, 89 F.3d at 929. In each case, it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. <u>Stewart</u>, 767 F.2d at 156. The fact that prison visitor has consented to the search upon prompting from officials does not eliminate the reasonable suspicion requirement. <u>Spear</u>, 71 F.3d at 630. To justify the strip search of a particular visitor under the reasonable suspicion standard, prison officials must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience. Inchoate, unspecified suspicions fall short of providing reasonable grounds to suspect that a visitor will attempt to smuggle drugs or other contraband into the prison. <u>Thorne</u>, 765 F.2d at 1277.

In <u>Thorne</u>, 765 F.2d at 1277, the Fifth Circuit did not find any objective facts that pointed to Mr. Thorne as a probable smuggler of drugs into the prison, and concluded that an

11

informant's tip that Mr. Thorne's wife was a likely source of an inmate's contraband was insufficient to justify a search of her husband.  In Spear, 71 F.3d at 631, the Sixth Circuit found the prison officials had reasonable suspicion to conduct a strip and body cavity search of Spear, where they relied on a tip from a reliable confidential informant that a single unrelated female would try to smuggle contraband to a particular inmate with an extensive history of drug possession violations in prison, despite the fact that Spear was not found to be in possession of contraband.

In the case at bar, the record shows that Morris entered USP-Pollock with his sister-in-law to visit his inmate-brother, Core Morris; Morris had 2.7 grams of cocaine secreted in balloons, which he then placed in a condom which he wore into the prison (Doc. 112, pp. 20-21; Doc. 131).  Prison officials had overheard, and recorded, Core Morris asking Morris to bring in "snow bunny" (powder cocaine) he could use to barter for protection (Doc. 131).

According to the facts agreed to by Morris in his presentence memorandum (Doc. 112) and a letter to the court Morris' attorney (Doc. 131), prison officials at USP-Pollock were alert for an attempt by Alicia or Daniel Morris to smuggle contraband into the prison due to the content of monitored phone calls with Core Morris; after seeing suspicious hand signals in the visiting room, prison officials ended the visit with Core Morris, asked Alicia and

12

Daniel if they would consent to a search, and they agreed (Doc. 112, pp. 20-21; Doc. 131). In his Section 2255 motion, Daniel states he did not consent, but instead remained quiet, neither assenting nor declining (Doc. 131). The record further shows that, when Daniel was taken to the men's restroom for a pat search, he dropped his pants, volunteered the drugs, and confessed to both USP-Pollock staff and an FBI agent (Doc. 131).

The prison officials at USP-Pollock had at least reasonable suspicion, based on the monitored phone conversations and Daniel's visit with Core, to believe Daniel Morris was carrying contraband which he would attempt to pass to Core Morris. Based on that reasonable suspicion, the prison officials did not need Morris' consent to search him for contraband. Therefore, had Morris' attorney filed a motion to suppress the contraband found during the search of Morris, that motion probably would not have been successful.

Morris further argues his attorney should have filed a motion to suppress his statements to the BOP officials and the FBI. Morris admits the FBI read him th Miranda warnings, which include the right to remain silent until counsel could be present during questioning, but contends the BOP officials failed to do so. Morris further contends he was under the influence of drugs and

alcohol when he gave his statements.[1]

First, it is noted that Morris offers nothing more than self-serving statements that his confessions were not voluntary. A habeas petitioner or Section 2255 movant has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant habeas relief. Uresti v. Lynaugh, 821 F.2d 1099, 1103 (5th Cir. 1987); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108 S.Ct. 1059 (1988); United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983), cert. den., 467 U.S. 1251, 104 S.Ct. 3534 (1984); United States v. Jones, 614 F.2d 80, 82 (5th Cir.), cert. den., 446 U.S. 945, 100 S.Ct. 2174 (1980).

Second, Morris was caught at BOP-Pollock with contraband hidden on his person following monitored telephone conversations regarding that contraband with the inmate he was visiting. Even if Morris' attorney had successfully pursued a motion to suppress Morris' statements and his case had gone to trial, there was probably sufficient evidence to at least convict Morris of

---

[1] Coercive police activity is a necessary predicate to the finding that a confession is not voluntary. In order for a defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and that there was a link between the coercive conduct of the police and his confession. U.S. v. Bell, 367 F.3d 452, 461 (5th Cir. 2004). Morris' voluntary actions in imbibing drugs and alcohol prior to entering USP-Pollock does not constitute "coercive police activity." Compare, U.S. v. Fernandez, 134 F.3d 379, *3 (9th Cir. 1998).

14

attempting to provide contraband to an inmate.[2] In other words, Morris' confessions were not necessary for the government to obtain a conviction. Morris was initially charged with five counts, including conspiracy and possession of powder cocaine with intent to distribute, charges which carry severe penalties of imprisonment. Through his plea bargain, Morris was convicted only of one count, attempting to provide contraband to an inmate, and sentenced to thirty months imprisonment. Therefore, even assuming Morris can show his attorney erred in failing to pursue a motion to suppress his confessions, Morris has not shown prejudice resulting from her failure to do so. Morris has not shown there is a reasonable probability that, but for his attorney's alleged error in failing to move to suppress his statements, he would not have accepted the plea bargain and pleaded guilty and would have instead gone to trial. Compare, U.S. v. Hopkins, 2008 WL 4534396, *6-*7 (E.D.La. 2008).

These grounds for relief are meritless.

Ground 3 - Failure to Investigate and Research

Finally, Morris argues that his counsel's failure to properly advise him of his Fourth, Fifth, and Sixth Amendment rights renders his plea agreement with the government involuntary, unintelligent,

---

[2] Morris was also charged with conspiring with an inmate to possess a prohibited object, making false statements to the Bureau of Prisons, conspiring to distribute powder cocaine, and possession with intent to distribute powder cocaine.

and unknowing, thereby invalidating his guilty plea, because Morris relied solely on the advice of counsel that he was indeed guilty. More specifically, Morris contends his counsel was ineffective for failure to investigate and research the illegal search, seizure and detention, and the possibility of suppressing Morris' confessions.

As discussed above, Morris has failed to show that he had ineffective assistance of counsel. Therefore, Morris cannot show that his counsel failed to advise him appropriately regarding the plea agreement. This ground for relief is also meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Morris' Section 2255 motion to vacate, set aside, or correct sentence (Doc. 163) be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

**WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 6th day of October, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE